AO 93 (Rev. 12/09) Search and Seizure Warrant  (USAO CDCA Rev. 01/2013)

# UNITED STATES DISTRICT COURT
for the
Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with the account identified as<br>"fliteman123@yahoo.com", that is stored at premises<br>controlled by Yahoo! Inc. | )<br>)<br>)  Case No.  **16-1520M**<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____Central_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:
        See Attachment A

        The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
        See Attachment B

        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property. Such affidavit(s) or testimony are incorporated herein by reference and attached hereto

        **YOU ARE COMMANDED** to execute this warrant on or before     14 days from the date of its issuance
                                                                                          *(not to exceed 14 days)*
☑ in the daytime  6:00 a.m. to 10 p.m.    ☐ at any time in the day or night as I find reasonable cause has been
                                                                    established.

                                        You must give a copy of the warrant and a receipt for the property
taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the
place where the property was taken.

        The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an
inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
on duty at the time of the return through a filing with the Clerk's Office.
                                        *(name)*

        IT IS FURTHER ORDERED that the Provider named in Attachment A shall comply with the further orders set
forth in Attachment B, and shall not notify any person, including the subscriber(s) of each account identified in Attachment A,
of the existence of the warrant.

Date and time issued:  7-28-16  11²⁰A.r.          _____
                                                                              *Judge's signature*

City and state:  Los Angeles, California          Frederick F. Mumm, U.S. Magistrate Judge
                                                                              *Printed name and title*

AUSA: David M. Herzog (213-894-0600)

FILED
CLERK U.S. DISTRICT COURT
2016 SEP 12  P 9: 57
CENTRAL DISTRICT OF
CALIFORNIA
LOS ANGELES
BY: ___

AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>16- 1520M | Date and time warrant executed:<br>7/28/16    2:42PM | Copy of warrant ~~and inventory~~ left with:<br>Yahoo! Inc. |
| Inventory made in the presence of : Nancy Bravo, IRS, HSI | | |
| Inventory of the property taken and name of any person(s) seized:<br>[Please provide a description that would be sufficient to demonstrate that the items seized fall within the items authorized to be seized pursuant to the warrant (e.g., type of documents, as opposed to "miscellaneous documents") as well as the approximate volume of any documents seized (e.g., number of boxes).  If reference is made to an attached description of property, specify the number of pages to the attachment and any case number appearing thereon.] | | |

1  Compact Disk " 319586 "

700MB

CD-R

"Response to search warrant"

---

**Certification** (by officer present during the execution of the warrant)

I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and was returned along with the original warrant to the designated judge through a filing with the Clerk's Office.

Date:    9-1-16

_____
Executing officer's signature

HSI  SA  My Buch
Printed name and title

**AFFIDAVIT**

I, Diane Asato, being duly sworn, declare and state as follows:

### I.   INTRODUCTION

1.    I am a Special Agent ("SA") with the United States
Department of Homeland Security ("DHS"), Immigration and Customs
Enforcement ("ICE"), Homeland Security Investigations ("HSI"),
assigned to the Special Agent in Charge, Los Angeles, California
field office ("HSI Los Angeles").  I have been so employed since
June 2003.  I am currently assigned to the HSI Los Angeles Child
Exploitation Investigations Group ("CEIG") where I investigate
criminal violations relating to child exploitation and child
pornography, including violations pertaining to the illegal
production, distribution, receipt, and possession of child
pornography.  I have received training in the areas of child
pornography and child exploitation, and I have had the
opportunity to observe and review various examples of child
pornography in many forms of media, including computer media.  I
have also successfully completed the Criminal Investigator
Training Program and the ICE Special Agent Training Program at
the Federal Law Enforcement Training Center.  In these programs,
I learned about, and was evaluated on, a number of investigative
techniques and subjects, including computer crimes and child
pornography crimes.  I have also participated in the execution
of numerous search warrants, many of which involved child
exploitation and/or child pornography offenses.

2.    I make this affidavit in support of an application for
a search warrant for information associated with the account

identified as an e-mail account (the "SUBJECT ACCOUNT") that is stored at premises controlled by Yahoo!, Inc., a provider of electronic communication and remote computing services, headquartered at 701 First Avenue, Sunnyvale, California 94089 ("Yahoo!") (Yahoo! is referred to herein as the "PROVIDER").[1] The information to be searched is described in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A) and 2703(d)[2] to require the PROVIDER to disclose to the

---

[1] Because this Court has jurisdiction over the offense(s) being investigated, it may issue the warrant to compel the PROVIDER pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A). See 18 U.S.C. §§ 2703(a) ("A governmental entity may require the disclosure by a provider . . . pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . .") by a court of competent jurisdiction") and 2711 ("the term 'court of competent jurisdiction' includes -- (A) any district court of the United States (including a magistrate judge of such a court) or any United States court of appeals that -- (i) has jurisdiction over the offense being investigated; (ii) is in or for a district in which the provider of a wire or electronic communication service is located or in which the wire or electronic communications, records, or other information are stored; or (iii) is acting on a request for foreign assistance pursuant to section 3512 of this title").

[2] The government is seeking non-content records pursuant to 18 U.S.C. § 2703(d). To obtain the basic subscriber information, which do not contain content, the government needs only a subpoena. See 18 U.S.C. § 2703(c)(1), (c)(2). To obtain additional records and other information--but not content-- pertaining to subscribers of an electronic communications service or remote computing service, the government must comply with the dictates of section 2703(c)(1)(B), which requires the government to supply specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation in order to obtain an order pursuant to 18 U.S.C. § 2703(d). The requested warrant calls for both records containing content (see Attachment B paragraph II.10.a) as well as subscriber records and other records and information that do not contain content (see Attachment B paragraph II.10.b).

government copies of the information (including the content of communications) described in Section II of Attachment B. Upon receipt of the information described in Section II of Attachment B, law enforcement agents and/or individuals assisting law enforcement and acting at their direction will review that information to locate the items described in Section III of Attachment B. Attachments A and B are incorporated herein by reference.

3. As described more fully below, I respectfully submit there is probable cause to believe that the information associated with the SUBJECT ACCOUNT constitutes evidence, contraband, fruits, or instrumentalities of criminal violations of 18 U.S.C. §§ 2252A(a)(5) (possession of child pornography), 2252(a)(2) (receipt of child pornography), and 1462 (importation of obscene materials).

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. SUMMARY OF INVESTIGATION

5. As set forth in detail below, Yahoo! reported to the National Center for Missing and Exploited Children ("NCMEC")

3

that the email account "fliteman123@yahoo.com" (the "SUBJECT ACCOUNT") received multiple emails containing child pornography. Further, there is probable cause to believe that the user of the SUBJECT ACCOUNT resides in Lakewood, California in the Central District of California.

### III. DEFINITION OF TERMS

6.    The following terms have the indicated meaning in this affidavit:

a.    The terms "minor," "sexually explicit conduct," "visual depiction," "producing," and "child pornography" are defined as set forth in Title 18, United States Code, Section 2256.

b.    The term "illicit sexual conduct" is defined as set forth in Title 18, United States Code, Section 2423(f).

c.    The term "computer" is defined as set forth in Title 18, United States Code, Section 1030(e)(1).

d.    The term "e-mail" (electronic mail) is defined as the text messages sent from one person to another via a computer.  E-mail can also be sent automatically to a large number of addresses via a mailing list.

e.    The term "Internet" is defined as the worldwide network of computers -- a noncommercial, self-governing network devoted mostly to communication and research with roughly 500 million users worldwide.  The Internet is not an online service and has no real central hub.  It is a collection of tens of thousands of computer networks, online services, and single user components.  In order to access the Internet, an individual

computer user must use an access provider, such as a university, employer, or commercial Internet Service Provider ("ISP"), which operates a host computer with direct access to the Internet.

f.    The term "Internet Protocol" ("IP") is defined as the primary protocol upon which the Internet is based.   IP allows a packet of information to travel through multiple networks (groups of linked computers) on the way to its ultimate destination.

g.    The term "IP Address" is defined as a unique number assigned to each computer directly connected to the Internet (for example, 172.191.142.150).   Each computer connected to the Internet is assigned a unique IP address while it is connected.   The IP address for a user may be relatively static, meaning it is assigned to the same subscriber for long periods of time, or dynamic, meaning that the IP address is only assigned for the duration of that online session.

h.    The term "Internet Service Provider" ("ISP") is defined as a business that allows a user to dial into or link through its computers thereby allowing the user to connect to the Internet for a fee.   ISPs generally provide only an Internet connection, an electronic mail address, and maybe Internet browsing software.   A user can also connect to the Internet through a commercial online service such as AT&T, Verizon, or Time Warner Cable.   With this kind of connection, the user gets Internet access and the proprietary features offered by the online service, such as chat rooms and searchable databases.

## IV.   STATEMENT OF PROBABLE CAUSE

**A.   EVIDENCE THAT THE SUBJECT ACCOUNT RECEIVED IMAGES OF CHILD PORNOGRAPHY**

7.    I know that ISPs report emails containing suspected child pornography to the National Center for Missing and Exploited Children ("NCMEC") using the national "cybertipline." I believe that NCMEC conducts its own investigation and passes information along to law enforcement.

8.    I have reviewed cybertipline reports from NCMEC indicating that on two different occasions, from different email accounts, someone emailed different forms of suspected child pornography to the email account "fliteman123@yahoo.com" (the "SUBJECT ACCOUNT"). I have learned the following.

**a.   48 Images of Child Pornography Received By SUBJECT ACCOUNT on September 10, 2015**

i.    In approximately December 2015, Yahoo! reported to NCMEC that on or about September 10, 2015, at approximately 22:42:45, UTC, someone using the email account "mariacristinavargas92@yahoo.com" ("Sender Account 1") sent an email with subject heading "Fw: new pics SaGo  !  GRACEL  !!! …" to the SUBJECT ACCOUNT. Attached to the email were 48 images. I have reviewed these images and, based on my training and experience in child exploitation investigations, I believe that the images contained child pornography. For example:

(I)   The image entitled "Gracel_Set35_057.jpg" is a still image that depicts a prepubescent minor female, approximately 9 to 11 years old, with

her legs spread apart, exposing her vaginal area.   The minor
female is wearing thigh high, black stockings.

(II) The image entitled,
"Gracel_Set35_073.jpg" is a still image that depicts what
appears to the same minor female, orally copulating an adult
male's penis.

(III)     The image entitled,
"Gracel_Set35_102.jpg" is a still image that depicts what
appears to the same minor female, being penetrated vaginally by
an adult male's penis.

**b.    One Video of Child Pornography Received By
SUBJECT ACCOUNT on September 14, 2015**

i.    In approximately December 2015, Yahoo!
reported to NCMEC that on or about September 14, 2015, at
approximately 16:26:43, Coordinated Universal Time ("UTC"),
someone using the email account "carmina.villaruel10@yahoo.com"
("Sender Account 2") sent a video titled "SNAG-0029.avi,"  to
the SUBJECT ACCOUNT via an email with subject heading "Fw:."   I
have reviewed the video, and based on my training and
experience, I believe that it contained child pornography.

(I)   The video is approximately 4 minutes
and 12 seconds in length, and depicts a nude minor female,
approximately 14 to 16 years old, orally copulating an adult
male's penis.

B.   **BASIS FOR BELIEF THAT IMAGES OF CHILD PORNOGRAPHY WILL
     STILL BE FOUND IN THE SUBJECT ACCOUNT**

9.    As set forth above, the user of the SUBJECT ACCOUNT
received images of suspected child pornography on two different
occasions (September 10 and 14, 2015), from two different Yahoo!
email accounts (cristinavargas92@yahoo.com and
carmina.villaruel10@yahoo.com) in two different formats (48
still images on one occasion, a single video on the other).

10.   On July 6, 2016, my colleague, HSI Special Agent My
Bach, spoke with a representative of Yahoo!, who explained that
Yahoo!'s standard practice is to report images of suspected
child pornography to NCMEC within 48 hours of observing the
images.  Yahoo! reported the images in the SUBJECT ACCOUNT to
NCMEC in December 2015.  For that reason, I believe that in
December 2015, an employee at Yahoo! observed the images of
suspected child pornography in the SUBJECT ACCOUNT that the
SUBJECT ACCOUNT had received in September 2015.

11.   Based on my training and experience, I believe that
these circumstances are not accidental; that is, these emails
were not spam or unwanted by the recipient of the emails.  To
the contrary, because child pornography is contraband and
impossible to obtain through legal means, I believe that anyone
who intentionally receives almost 50 images of suspected child
pornography from different email accounts, on different
occasions, in different formats, has demonstrated a sexual
interest in children and the willingness and ability to obtain
and/or collect such images.

12.   Accordingly, I believe that these facts indicate that the user of the SUBJECT ACCOUNT knowingly and intentionally received images of child pornography.  Based on my training and experience, I know that collectors of child pornography who have gone to the trouble of obtaining contraband images value their collections, and tend to keep them close at hand, to enable them to view their collections with ease.  Specifically, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, including electronic mail accounts.

13.   Here, the user of the SUBJECT ACCOUNT used his or her email account as the specific means of obtaining images of child pornography; I submit that there is probable cause to believe that there will be images of child pornography in the SUBJECT ACCOUNT despite the passage of time between December 2015, when Yahoo! notified NCMEC of the images in the SUBJECT ACCOUNT, and July 2016, when I request authorization to search the SUBJECT ACCOUNT.

C.   **IDENTIFICATION OF THE SUBJECT ACCOUNT AND THE USER OF THE SUBJECT ACCOUNT**

14.   On or about May 12, 2016, I learned the following information from SA My Bach:

a.   In May 2016, Yahoo! reported that the SUBJECT ACCOUNT is still active, and is registered to Travis Ozier at telephone number 562-XXX-9241.  The account was registered on

September 2, 2015, from IP address 162.231.145.248 (the "Suspect IP Address").

      b.   On or about May 11, 2016, SA Bach conducted a search on the social networking website, www.facebook.com ("Facebook") for "Travis Ozier" and the telephone number 562-XXX-9241.  Both searches returned with a positive match for a user profile of "Travis Ozier" at "www.facebook.com/fliteman31." I note that the SUBJECT ACCOUNT is fliteman123@yahoo.com.  The email address associated with the Facebook account is "fliteman31@sbcglobal.net."  The user of "Travis Ozier's" Facebook profile appears to be a male Caucasian, approximately 35 to 45 years old with a birthday on September 9.  The user of the "Travis Ozier" Facebook account states in his public Facebook profile that he lives in Lakewood, California, worked as a vendor at the Disneyland resort, and studied at the California School of Culinary Arts.

      c.   On or about May 11, 2016, SA Bach reviewed a Consolidated Lead Evaluation and Reporting ("CLEAR") records check for "Travis Ozier."  Based on my training and experience, I know that CLEAR is a report generated by Thomson Reuters, which is a company that consolidates public records, including addresses, driver licenses, property deed transfers, and corporate information, as well as some property records.  The CLEAR report reflects that 45 year-old male Travis Ozier has been associated with the address at 5506 Whitewood, Lakewood,

California 90712 (the "Lakewood Residence") from approximately February 1993 to November 2014.  Based on my training and experience, I understand that the dates reflected in the CLEAR report are based on dates obtained from records such as deed transfers, credit reports, or utilities and thus do not necessarily reflect a start and end date of a person's residence at a particular address, just the dates on or about when CLEAR received records reports.  The CLEAR report does not reflect any new address for Travis Ozier after November 2014.  Additionally, the CLEAR report indicated that Travis Ozier was a security guard (license number: 1726980) licensed by the Bureau of Security and Investigative Services ("BSIS").

d.    On or about May 11, 2016, SA Bach reviewed records from the California Department of Motor Vehicles ("DMV") and learned that Travis Ozier's latest address was listed as the Lakewood Residence.

e.    On or about May 12, 2016, SA Bach conducted a Maxmind search for the Suspect IP Address and learned that it was assigned to Paramount, California with ISP AT&T U-Verse.

f.    On or about May 12, 2016, SA Bach conducted a license search at the BSIS website www.bsis.ca.gov (the California Department of Consumer Affairs, Bureau of Security and Investigative Services).  BSIS indicates that license 1726980 is issued to Travis K. Ozier, is current and expires on May 31, 2017.

g.    On or about April 13, 2016, in anticipation of obtaining a search warrant, SA Bach sent Yahoo! a preservation

letter requesting that the records and contents of the SUBJECT ACCOUNT be preserved for 90 days pursuant to Title 18, United States Code, 2703(f).

15. Other than what has been described herein, to my knowledge the United States has not attempted to obtain the contents of the SUBJECT ACCOUNT by other means.

## V.   BACKGROUND ON E-MAIL AND THE PROVIDER

16. In my training and experience, I have learned that providers of e-mail offer a variety of online services to the public. Providers, like the PROVIDER here, allow subscribers to obtain accounts like the SUBJECT ACCOUNT. Subscribers obtain an account by registering with the PROVIDER. During the registration process, the PROVIDER asks subscribers to provide basic personal information. Therefore, the computers of the PROVIDER are likely to contain stored electronic communications and information concerning subscribers and their use of the PROVIDER's services, such as account access information, e-mail or message transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of a subject account.

17. A subscriber of the PROVIDER can also store with the PROVIDER files in addition to e-mails or other messages, such as address books, contact or buddy lists, calendar data, pictures or photos or videos (other than ones attached to e-mails), notes, and other files, on servers maintained and/or owned by

the PROVIDER.  In my training and experience, evidence of who was using an account may be found in such information.

18.  In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail.  Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including credit card or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of a subject account.

19.  In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, e-mail providers often have records of the IP addresses associated with particular logins to an account.  Because every device that connects to the Internet must use an IP address, IP address

information can help to identify which computers or other devices were used to access a subject account.

20.   In my training and experience, e-mail users will sometimes communicate directly with the service providers about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Providers of e-mails typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of a subject account.

21.   I know from my training and experience that the complete contents of an account may be important to establishing the actual user who has dominion and control of that account at a given time.  Accounts may be registered in false names or screen names from anywhere in the world with little to no verification by the service provider.  They may also be used by multiple people with access to an account.  Given the ease with which accounts may be created under aliases, and the rarity with which law enforcement has eyewitness testimony about a defendant's use of an account, investigators often have to rely on circumstantial evidence to show that an individual was the actual user of a particular account.  By piecing together information contained in the contents of an account,

investigators can establish who the actual user of an account was. Often those pieces will come from a time period before the account was used in the criminal activity. Limiting the scope of the search would, in some instances, prevent the government from identifying the true user of the account and, in other instances, may not provide a defendant with sufficient information to identify other users of the account. Therefore, the contents of a given account, including the e-mail addresses or account identifiers and messages sent to that account, often provides important evidence regarding the actual user's dominion and control of that account. For the purpose of searching for content demonstrating the actual user(s) of the SUBJECT ACCOUNT, I am requesting a warrant requiring the PROVIDER to turn over all information associated with the SUBJECT ACCOUNT with the date restriction included in Attachment B for review by the search team.

22. Relatedly, the government must be allowed to determine whether other individuals had access to the SUBJECT ACCOUNT. If the government were constrained to review only a small subsection of an account, that small subsection might give the misleading impression that only a single user had access to the account.

23. I also know based on my training and experience that criminals discussing their criminal activity may use slang, short forms (abbreviated words or phrases such as "lol" to express "laugh out loud"), or codewords (which require entire strings or series of conversations to determine their true

meaning) when discussing their crimes.  They can also discuss aspects of the crime without specifically mentioning the crime involved.  In the electronic world, it is even possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of a message or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and right parenthesis ":)" to convey a smile or agreement) to discuss matters.  "Keyword searches" would not account for any of these possibilities, so actual review of the contents of an account by law enforcement personnel with information regarding the identified criminal activity, subject to the search procedures set forth in Attachment B, is necessary to find all relevant evidence within the account.

24.  As set forth in Attachment B, I am requesting warrants that permit the search team to keep the original production from the PROVIDER under seal until the investigation is completed and, if a case is brought, that case is completed through disposition, trial, appeal, or collateral proceeding.

a.  I make that request because I believe it might be impossible for the PROVIDER to authenticate information taken from the SUBJECT ACCOUNT as its business record without the original production to examine.  Even if the PROVIDER kept an original copy at the time of production (against which it could compare against the results of the search at the time of trial), the government cannot compel the PROVIDER to keep a copy for the entire pendency of the investigation and/or case.  If the

original production is destroyed, it may be impossible for the PROVIDER to examine a particular document found by the search team and confirm that it was a business record of the PROVIDER's taken from the SUBJECT ACCOUNT.

b.    I also know from my training and experience that many accounts are purged in the ordinary course of business by providers.  For example, if an account is not accessed within a specified time period, it -- and its contents -- may be deleted. As a consequence, there is a risk that the only record of the contents of an account might be the production that a provider makes to the government; a defendant who is incarcerated may not be able to access his or her account in perpetuity.  Preserving evidence, therefore, would ensure that the government can satisfy its <u>Brady</u> obligations and give the defendant access to evidence that might be used in his or her defense.

25.    Providers of e-mail often maintain have access to and store information related to the location of the users of accounts they service.  That information may be obtained by the provider in a number of ways.  For example, a user may access the provider's services by running an application on the user's phone or mobile device, which application has access to the location information residing on the phone or mobile device, such as Global Positioning System (GPS) information.  It may also be accessible through "check-in" features that some providers offer that allows users to transmit or display their location to their "friends" or "acquaintances" via the provider.

## VI.   <u>REQUEST FOR NON-DISCLOSURE</u>

26.   Pursuant to 18 U.S.C. § 2705(b), I request that the Court enter an order commanding the PROVIDER not to notify any person, including the subscriber(s) of the SUBJECT ACCOUNT, of the existence of the warrant because there is reason to believe that such notification will result in: (1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) otherwise seriously jeopardizing the investigation.   The current investigation set forth above is not public.   From my training and experience, I know that those who use the Internet to sexually exploit children and/or trade child pornography are highly sensitive to signs that the government is investigating them, and disclosure to them of an investigation may lead not only to the destruction of evidence that they themselves possess, but also to their spreading information about the investigation to other individuals who are also involved in such offenses, thus interfering with numerous law enforcement investigations.

## VII.  CONCLUSION

27.  Based on the foregoing, I request that the Court issue the requested search warrant.

_____
DIANE ASATO, Special Agent
DEPARTMENT OF HOMELAND
SECURITY, HOMELAND SECURITY
INVESTIGATIONS

Subscribed to and sworn before
me
on July 28, 2016.

_____
UNITED STATES MAGISTRATE JUDGE
**Frederick F. Mumm**

19

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

This warrant applies to information associated with the account identified as "fliteman123@yahoo.com" that is stored at premises controlled by Yahoo! Inc., a company that accepts service of legal process at 701 First Avenue, Sunnyvale, California 94089.

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

**I.   SEARCH PROCEDURE**

1.   The search warrant will be presented to personnel of Yahoo! Inc. (the "PROVIDER"), who will be directed to isolate the information described in Section II below.

2.   To minimize any disruption of service to third parties, the PROVIDER's employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the information described in Section II below.

3.   The PROVIDER's employees will provide in electronic form the exact duplicate of the information described in Section II below to the law enforcement personnel specified below in Section IV.

4.   With respect to contents of wire and electronic communications produced by the PROVIDER (hereafter, "content records," see Section II.10.a below), law enforcement agents and/or individuals assisting law enforcement and acting at their direction (the "search team") will examine such content records pursuant to search procedures specifically designed to identify items to be seized under this warrant.  The search shall extract and seize only the specific items to be seized under this warrant (see Section III below).  In conducting this search, the search team shall take notes regarding how it conducts the search.

i

5.    If the search team encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

6.    The search team will complete its search of the content records as soon as is practicable but not to exceed 120 days from the date of receipt from the PROVIDER of the response to this warrant.  If additional time is needed, the government may seek an extension of this time period from the Court within the original 120-day period.

7.    Once the search team has completed its review of the content records and created copies of the items seized pursuant to the warrant, the original production from the PROVIDER will be sealed -- and preserved by the search team for authenticity and chain of custody purposes -- until further order of the Court.  Thereafter, the search team will not access the data from the sealed original production which fell outside the scope of the items to be seized absent further order of the Court.

8.    The special procedures relating to digital data found in this warrant govern only the search of digital data pursuant to the authority conferred by this warrant and do not apply to any search of digital data pursuant to any other court order.

9.    Pursuant to 18 U.S.C. § 2703(g) the presence of an agent is not required for service or execution of this warrant.

## II.   INFORMATION TO BE DISCLOSED BY THE PROVIDER

10.   To the extent that the information described in Attachment A is within the possession, custody, or control of the PROVIDER, including any information that has been deleted but is still available to the PROVIDER, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose the following information to the government for the SUBJECT ACCOUNT listed in Attachment A:

a.   All contents of all wire and electronic communications associated with the SUBJECT ACCOUNT, limited to that which occurred on or after September 2, 2015, including:

i.   All e-mails, communications, or messages of any kind associated with the SUBJECT ACCOUNT, including stored or preserved copies of messages sent to and from the account, deleted messages, and messages maintained in trash or any other folders or tags or labels, as well as all header information associated with each e-mail or message, and any related documents or attachments.

ii.   All records or other information stored by subscriber(s) of the SUBJECT ACCOUNT, including address books, contact and buddy lists, calendar data, pictures or photos, videos, notes, texts, links, user profiles, account settings, access logs, and files.

iii. All wireless Internet ("Wi-Fi") access records, short message service ("SMS") records, and password history records associated with the SUBJECT ACCOUNT.

iv.   All instant messaging or "chat" histories associated with the SUBJECT ACCOUNT, including stored or preserved copies of instant messages or chats sent to and from the account, draft instant messages or chats, and deleted instant messages or chats, as well as all header information associated with each instant message or chat.

v.   All records pertaining to communications between the PROVIDER and any person regarding the SUBJECT ACCOUNT, including contacts with support services and records of actions taken.

vi.   All contraband, including sexually explicit pictures and images of children (i.e., child pornography) as defined in Title 18, United States Code, Section 2256(8).

vii.  Any communications in any format, seeking to trade, receive, distribute, and/or produce child pornography.

viii.   Any communications in any format, which identify or tend to identify any individual or group that possesses child pornography, distributes child pornography, seeks to receive child pornography, and/or produces child pornography.

ix.   All records pertaining to communications between the PROVIDER and any person regarding the SUBJECT ACCOUNT, including contacts with support services and records of actions taken.

b.   All other records and information, including:

i.   All user connection logs and transactional information of all activity relating to the SUBJECT ACCOUNT

iv

described above in Section II.10.a, including all log files, dates, times, durations, data transfer volumes, methods of connection, IP addresses, ports, routing information, dial-ups, and locations.

ii.  All subscriber information pertaining to the SUBJECT ACCOUNT, including the date on which the account was created, the length of service, the IP address used to register the account, the subscriber's full name(s), screen name(s), other account names or e-mail addresses associated with the account, telephone numbers, physical addresses, and other identifying information regarding the subscriber, the types of service utilized, account status, account settings, login IP addresses associated with session dates and times, as well as means and source of payment, including detailed billing records.

iii. Any information showing the location of the user of a SUBJECT ACCOUNT, including while sending or receiving a message using a SUBJECT ACCOUNT or accessing or logged into a SUBJECT ACCOUNT.

## III. <u>INFORMATION TO BE SEIZED BY THE GOVERNMENT</u>

11.  For each SUBJECT ACCOUNT listed in Attachment A, the search team may seize:

a.  All information described above in Section II.10.a that constitutes evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. §§ 2252A(a)(5) (possession of child pornography), 2252A(a)(2) (receipt of child pornography), and 1462 (importation of obscene materials), and

v

those violations involving unidentified suspects and occurring on or after September 2, 2015, namely:

      i.   Information relating to who created, accessed, or used the SUBJECT ACCOUNT, including records about their identities and whereabouts.

      ii.   Information relating to the possession, distribution, receipt, production, and/or advertisement of child pornography.

      iii. Information relating to the molestation of minors.

      iv.   Information relating to any potential meeting places and times related to the exchange, possession, or distribution of child pornography, e.g., addresses, cross-streets, intersections, and/or business names.

      v.   Information relating to children, including discussions that are sexual in nature.

      vi.  All contraband, including sexually explicit pictures and images of children (i.e., child pornography) as defined in Title 18, United States Code, Section 2256(8).

      vii. Any communications in any format, seeking to trade, receive, distribute, and/or produce child pornography.

      viii.   Any communications in any format, which identify or tend to identify any individual or group which possesses child pornography, distributes child pornography, seeks to receive child pornography, and/or produces child pornography.

   b. All records and information described above in Sections II.10.b.

## IV. <u>PROVIDER PROCEDURES</u>

  12. IT IS ORDERED that the PROVIDER shall deliver the information set forth in Section II within 10 days of the service of this warrant. The PROVIDER shall send such information via express delivery service to:

Special Agent Diane Asato
501 West Ocean Boulevard, Suite 7200
Long Beach, California 90802
Phone: (562) 624-4043
Fax: (562) 980-3242
diane.e.asato@ice.dhs.gov

  13. IT IS FURTHER ORDERED that the PROVIDER shall provide the name and contact information for all employees who conduct the search and produce the records responsive to this warrant. IT IS FURTHER ORDERED that the PROVIDER shall not notify any person, including the subscriber(s) of each account identified in Attachment A, of the existence of the warrant.